HENRY A. VATABLE et al., Respondents, *v*. THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

Nine other actions by other plaintiffs against the same defendant.

In the absence of any statute to the contrary, the foreclosure of a railroad mortgage cuts off all the rights and interests of the mortgagor or the railroad corporation in the mortgaged property, and nothing is left for the general creditors and stockholders save their interests in the surplus after satisfying the mortgage.

Where the property and franchises of a railroad corporation are purchased on foreclosure sale in pursuance of a plan for the readjustment of the

respective interests of the mortgage creditors and stockholders as authorized and provided for by the " act to facilitate the reorganization of railroads sold under mortgage," etc. (§ 2, chap. 430, Laws of 1874, as amended by chap. 446, Laws of 1876), the foreclosure becomes *absolute against the* corporation, and all its rights and the proprietary interests of the stockholders are as absolutely barred and cut off as if the purchasers had purchased for themselves. The plan has reference only to the new corporation to be formed and to interests therein.

While, therefore, the stockholder has the right under said act (§ 3) to assent to the plan " at any time within six months " after the organization of the new company, and by complying with the terms and conditions becomes " entitled to his *pro rata* benefit therein," it is a condition precedent that he must signify his assent within the time specified ; if he fails so to do, he forfeits the right, and against such a forfeiture the courts can give no relief.

The property and franchises of the E. R. Co. were purchased on foreclosure sale by certain trustees in pursuance of and subject to the provisions of a plan, which, after providing for the organization of a new company and the transfer to it of the property purchased, prescribed the terms and conditions upon which the old stockholders could become stockholders in the new company. Among other things they were required to make certain payments upon their stock in the old company before they could exchange it for the new stock, which payments were required to be made " before the expiration of such a time as may be lawfully limited by the parties." A time was fixed which was more than six months after the organization of the new company, and notice thereof was given by publication in many newspapers in this and other countries. In actions brought by stockholders in the old company, who failed to make payments as prescribed within the time so fixed, to be allowed to come in and to become stockholders in the new company, and who claimed that they had received no notice of the time fixed, *held*, that the plaintiffs were chargeable with notice of the law securing them the right to assent within six months, and also with the general features of the scheme of readjustment of interests, as they were embodied in the articles filed for the organization of the new company ; that the projectors of the plan were not bound to provide for any notice ; that the plan contained no provision for notice, and none could be implied, it being left simply to the discretion of the trustees whether or not to give any notice ; and, therefore, that plaintiffs had no right of action.

*It seems*, that assuming the plan required the trustees to give notice of the time fixed, no actual notice served upon all the stockholders could have been intended and none such was requisite ; and that notice by publication, such as was given, was sufficient.

(Argued March 17, 1884 ; decided May 6, 1884.)

THESE are appeals from judgments of the General Term of the Supreme Court, in the first judicial department, entered upon orders made at the October term, 1883, which affirmed judgments in favor of plaintiffs, entered upon decisions of the court on trial at Special Term.

Under judgment of foreclosure of a mortgage covering the property and franchises of the Erie Railway Company the mortgaged property was bid off by trustees in pursuance of a plan for the reorganization of the road as authorized by statute (Chap. 430, Laws of 1874, as amended by chap. 446, Laws of 1876); a new company, the defendant in these actions, was organized, to which was transferred the property so purchased.

The plaintiffs, who were stockholders in the old company, but who did not give their assent to the plan within the six months prescribed by said act, brought these actions to establish an alleged right on their part to come in under the plan and to compel defendant to issue to them severally a certain number of shares of its capital stock, to which, as such stockholders, they claimed to be entitled under said plan.

The further material facts are stated in the opinion.

*W. W. MacFarland* and *Joseph La Rocque* for appellants. When a corporation mortgages its property and all its franchises all the interests of its stockholders therein are included in the mortgage, and cut off by a foreclosure and sale. (*Thornton* v. *Wabash R'y Co.*, 81 N. Y. 467, 468.) No stockholder has a right to have any other stockholder or any one else do any thing to save his interest in the property. Each may do what he pleases to protect himself, or he may do nothing and take the consequences. (*Mickles* v. *Rochester City B'k*, 11 Paige, 127, 128; *Smith* v. *Ullman*, 15 Cent. L. J. 350; Pollock's Principles of Contract, 175, 177, 180.) There is no privity of contract between the plaintiffs and the defendant. (*Sullivan* v. *Portland, etc., R. R. Co.*, 4 Otto, 806.) The defendant, as a corporation, in respect of its contracts and the acquisition and disposition of property, is governed by the very same rules of law that natural persons are. (*Graham* v.

*R. R. Co.*, 12 Otto, 102; *County of Santa Clara* v. *So. Pac. R. R. Co.*, 18 Fed. Rep. 406.) The contract between the defendant and the trustees was not made by the latter as agents of plaintiffs; it gave the defendant no rights as against the plaintiffs, and consequently imposed no obligations upon the defendant in their favor, there was no mutuality, and the parties were utter strangers to each other. (Pollock's Principles of Contract, 174, 177, 178, 187, 194, 198.) The defendant company is under definite contract obligations in the premises which it must perform, and any judgment affecting those obligations rendered in the absence of the parties to whom they are due would be utterly void and leave the defendant liable as before. (*Schuehle* v. *Reiman*, 86 N. Y. 270; *Schrauth* v. *Dry Dock Sav'gs B'k*, id. 390.) It was open to the plaintiffs to make a plan and agreement of their own in opposition to all others, and to carry it out if they could, and in the event of a purchase no one would have had any claims upon them who had not joined them in their undertaking according to the very terms of the invitation, and strictly performed all conditions precedent. (*Wells* v. *Smith*, 7 Paige, 22; *Brown* v. *Weber*, 38 N. Y. 187; *People's B'k* v. *Mitchell*, 73 id. 413, 414.) A court of equity recognizes no rights, except such as are sanctioned by municipal jurisprudence. (Story's Eq., §§ 13, 14, 17, 19, 20; *Ellborough* v. *Ayres*, L. R., 10 Eq. 367; *Carlton* v. *Salem*, 103 Mass. 141.) There is no question here of taking the property of one person and giving it to another, or of forfeiture, with or without the breach of a condition or of any one's being deprived of his property against his consent, without due process of law. (*Thornton* v. *Wabash R'y Co.*, 81 N. Y. 462–467.)

*F. R. Coudert* and *John N. Lewis* for certain respondents. The " plan and agreement " having been made in the express interest and for the benefit of the stockholders, they, as beneficiaries, have the right to apply to the court for the enforcement of those benefits as secured to them by that agreement. (*Lawrence* v. *Fox*, 20 N. Y. 268.) There is nothing in the

Constitution, nor in the law of the State, vesting the trustees or the defendant with the right to deprive the stockholders of their property against their consent without due process of law. (*Jourdan* v. *Hyatt*, 13 Barb. 275, 281; *Eastern P. R.* v. *Vaughan*, 21 id. 161; 14 N. Y. 546.) Plaintiffs are entitled to have the certificates issued and delivered to them, as prayed, upon their complying with the terms of the "plan and agreement" — *i. e.*, upon the surrender of their Erie certificates and the payment of their assessments and interest. (Story's Eq. Jur., § 1319; 4 Kent's Comm. 129; *Giles* v. *Austin*, 6 J. & S. 235; 62 N. Y. 486.)

*William Allen Butler* for certain respondents. Capital stock of a corporation is simply the property of the corporation. Certificates of stock are the vouchers evidencing the extent of the holder's undivided interest in the entire mass of the corporate property. (*Livingston* v. *Lynch*, 3 Johns. Ch. 573, 598; *Hyatt* v. *Allen*, 56 N. Y. 553; *Williams* v. *W. U. Tel. Co.*, 93 id. 162, 188.) Where a trust is created for the benefit of a party, he is entitled, when he comes to the knowledge of it, to enforce its performance. Whether he was apprised of it at the time of its creation is immaterial. (*Moses* v. *Murgatroyd*, 1 Johns. Ch. 118; *Martin* v. *Funck*, 75 N. Y. 134; *Watts* v. *Shipman*, 21 Hun, 598.) Notwithstanding the failure by the plaintiffs to make the required money payment within the time limited, equity will relieve from a forfeiture of the shares; the case being one where the payment was only to preserve an existing right, and where compensation by payment is all that can be required, no new rights having intervened. (2 Story's Eq., § 319; *Jones* v. *N. Y. Guaranty & I. Co.*, 101 U. S. 622, 628; *Marshall* v. *Vicksburgh*, 15 Wall. 146; *City B'k* v. *Smith*, 3 G. & J. 265; *Robinson* v. *Cropsey*, 2 Ed. Ch. 138; *Wells* v. *Smith*, id. 78; *Walker* v. *Wheeler*, 2 Conn. 299; *Wheeler* v. *Walker*, id. 193; *De Forest* v. *Bates*, 1 Ed. Ch. 394; *Hayward* v. *Angell*, 1 Vern. 221, 222; *Giles* v. *Austin*, 62 N. Y. 486; 34 N. Y. Sup. Ct. 171, 188; 38 id. 215, 235; 47 How. Pr. 269.) The plaintiffs were not barred by any *laches* or

acquiescence on their part from the equitable relief sought in those actions and accorded by the judgment of the court below. (*Branch* v. *Jesup*, 106 U. S. 468 ; *Rochdale Co.* v. *King*, 2 Sim. [N. S.] 89 ; 9 H. of L. Cases, 387 ; *Platt* v. *Platt*, 58 N. Y. 646 ; *Giles* v. *Austin*, 62 id. 486.)

*W. Watson* for respondents.   A decree is not constructive notice to any persons who are not parties to it.   (Story's Eq., § 407.)   Personal notice is not dispensed with in proceedings to take private property except in cases where the statute prescribes some other, as by publication.   (*Owners of Ground* v. *Albany*, 15 Wend. 347 ; 2 Johns. 401 ; *Empire B'k*, 18 N. Y. 215 ; *Jackson* v. *Babcock*, 16 id. 248.)   When an effectual decree can be made between the parties actually before the court, it will entertain the suit and proceed to administer such relief as may be in its power, although there may be absent parties whose presence the court would require if within its jurisdiction. (*Shields* v. *Barron*, 17 How. 130 ; *Barney* v. *Baltimore City*, 6 Wall. 280 ; *Kendig* v. *Dean*, 27 U. S. 423 ; *Goodman* v. *Niblock*, 102 id. 566 ; Story's Eq. Pl., §§ 78, 79 ; *Hazard* v. *Durant*, 19 Fed. Rep. 476.)   As plaintiffs have no remedy at law, they can come into equity.   (Langdell on Equity Pleadings [2d ed.], 41.)

EARL, J.   A railroad company having the right by law to mortgage its property and franchises can confer upon the mort- gagee the same interests and rights which an individual by mortgage of his property can confer.   Unless some statute in- tervenes, the foreclosure of a railroad mortgage will cut off all the rights and interests of a railroad company, the mortgagor, in the property mortgaged, and nothing will be left for the gen- eral creditors and stockholders of the company but their interest in the surplus, if any, after satisfying the mortgage.   But for many years the legislature has attempted to protect the stock- holders of railroad companies against the consequences of fore- closures of mortgages upon their property by varying provisions of law more or less effectual.   The first act which has come under

my observation is chapter 502 of the Laws of 1853. The second section of that act provides that, in case of the foreclosure of a railroad mortgage, any stockholder of the mortgaging company shall, for the period of six months after the sale under such foreclosure, have the right to pay to the purchasers, under such sale, his proportion of the price paid on the sale. and the costs and expenses thereof, and thus have a proportional interest in the property and franchises purchased. That statute was practically superseded by a portion of section 1 of the act chapter 282 of the Laws of 1854, which provides that, whenever the purchaser of the real estate, stock and fixtures of any railroad corporation which may be sold by virtue of any mortgage shall acquire title to the same in the manner provided by law, such purchaser may associate with himself any number of persons and make, acknowledge, and file articles of association, and thus become incorporated under the General Railroad Act. (*Pratt* v. *Munson*, 84 N.Y. 582.) Section 1 of the act chapter 444 of the Laws of 1857 provides that it shall be lawful for any mortgagee of any railroad and the franchises thereof to become the purchaser of the same at any foreclosure sale thereof under the mortgage, and to hold and convey the same with all the rights and franchises belonging thereto or connected therewith. Of similar import and effect are the acts chapters 469 and 710 of the Laws of 1873.

Such was the course of legislation, and such the law until the act chapter 430 of the Laws of 1874, with which we are more particularly concerned, was passed. That act is entitled " An act to facilitate the reorganization of railroads sold under mortgage, and providing for the formation of new companies in such cases." The first and second sections of the act were amended by chapter 446 of the Laws of 1876, and I will cite them as thus amended. The first section provides that in case a railroad and the property, rights, privileges and franchises connected therewith shall be sold under a mortgage foreclosure, the purchasers, and such persons as they may associate with themselves, their grantees or assigns, may become a corporation, and as such may take, hold and possess the prop-

erty and franchises sold, by executing and filing the certificate provided in the section. Under that section any number of persons may, at a foreclosure sale of a railroad and its franchises, purchase the property for themselves, and organize a new company, which will possess all the powers, rights, privileges and franchises of the prior corporation, and be subject to the provisions of the general railroad laws of the State. In such case the rights of all the stockholders of the prior corporation will be absolutely barred and cut off by the foreclosure and sale.

But the purchasers at such a foreclosure sale, instead of buying absolutely for themselves, may buy the property in pursuance of a plan as mentioned in the second section of the act for the readjustment of the respective interests therein of the mortgage-creditors and stockholders of the company. Notwithstanding the formation of the plan, however, the foreclosure becomes absolute against the corporation, and all its rights and all the proprietary interests of the stockholders are absolutely barred and cut off. The entire property of the corporation passes under the sale as absolutely as it did under the prior statutes, and the plan has reference only to the new corporation to be formed and to interests therein. If the property be purchased under the plan, then such plan must be embodied in the certificate to be filed as required by the first section, and then, as provided in section 3, every stockholder " shall have the right to assent to the plan of readjustment and reorganization of interest pursuant to which such franchises and property shall have been purchased as aforesaid at any time within six months after the organization of said new company, and by complying with the terms and conditions of such plan become entitled to his *pro rata* benefits therein according to its terms."

So, after the foreclosure sale, the only property interest which a stockholder of the old company has left is in the surplus, if any, after satisfying the mortgage and other preferential claims. It is entirely optional with him whether he will come in under the plan and join the new company. All the statute secures to him is the option or privilege to join the new company by a compliance with the terms of the plan. If

he elects to join the new company, then he gets a proportional interest therein which may be of great value to him.    But his right to join the new company, so far as it depends upon the statute, must be exercised within the six months.    If he fails within that time to exercise his right by assenting to the plan, and thus becoming a party thereto, he cannot take or claim any rights under the plan.    It is clearly a condition precedent that he must signify his assent to the plan within six months. If he fails to do so, he forfeits no property, as that was swept away by the foreclosure sale; he loses simply the right or privi-  lege to join and become interested in the new company, and thus to acquire an interest in property.    That is a forfeiture, if it can properly be so called, which the law imposes, and against which the courts can give no relief.    (Story's Eq. Jur., §§ 1325, 1326; *Robinson* v. *Cropsey*, 2 Edw. Ch. 138 ; *Gorman* v. *Low*, id. 324 ; *Weed* v. *Weed*, 94 N. Y. 243.)    In such a case equity cannot relieve him from the performance of the condition precedent, and thus vest him with rights of property which he did not otherwise have.    (*City Bank* v. *Smith*, 3 Gill & J. 265 ; *Popham* v. *Bampfeild*, 1 Vern. 83.)    It would lead to intolerable inconvenience, confusion and difficulty if the stockholders of the old company could in such a case take their own time to assent to the plan of reorganization, and to assert their right to become members of the new company upon such facts as they would be able to establish in a court of equity.

Therefore, as these plaintiffs did not within the six months assent to the plan and comply with its terms, they can claim nothing in these actions by virtue of the statute, and we must further inquire whether there is any thing else upon which they can base their claims.

The judgment of foreclosure contains the following provision : " That in case the purchaser or purchasers of the said mortgaged premises should purchase and acquire title to the same pursuant to any plan or agreement of the kind contemplated and provided for by an act (the Act of 1874), and the amendments to that act, such purchaser or purchasers will take

title to the mortgage franchises and property so sold and purchased as herein provided, subject to all the lawful provisions and requirements of said plan and agreement, and they, their assigns and successors, and any corporation which may be organized for the purpose of taking title to such franchises and property shall possess all the powers, rights and privileges, and be subject to all the liabilities and obligations of the said statutes and of the said plan and agreement." Notwithstanding this provision the purchasers could purchase for themselves alone, but if they purchased under any plan, then they were to be bound by the plan, and their rights in the property and franchises purchased were to be subject to all the provisions of the plan.

Here there was a plan, and whatever rights these plaintiffs have must be based upon that, and it must, therefore, be referred to and considered.

The plan was drawn up and executed on the 14th day of December, 1877, more than a month after the foreclosure judgment was entered. It purports to be made under and in pursuance of the act of 1874, as amended in 1876, and it was embraced in the certificate executed for the formation of the new corporation, the defendant. It contains numerous provisions relating to the purchase of the property and franchises of the old company at the foreclosure sale by a purchasing committee, the formation of the new company, the transfer of the property purchased to the new company, and the terms and conditions upon which the stockholders of the old company could become stockholders in the new company. Among other things, the stockholders of the old company were required to make certain payments upon their stock in that company before they could exchange it for stock in the new company, and then there was the following provision which alone needs to be considered, as these plaintiffs place their main reliance upon it : "Payments in respect to old preferred or common stock, at the rates and on the terms hereinbefore specified, so far as not yet made, may be made to the Farmers' Loan and Trust Company of the city of New York, or to the parties of

the first part in London by any holders of such stock before the expiration of such time as may be lawfully limited by the parties either of the first or of the second part, but with interest," etc. In pursuance of the power conferred upon them by this provision, the parties of the first part, called the reconstruction trustees, fixed finally October 31, 1878, as the last day upon which the stockholders of the old company could come in under the plan and make the payments upon their stock, and gave notice of that fact by publication in many newspapers in England, Scotland, Ireland and this State. None of these plaintiffs offered to make any payments upon their stock until after the day named, and they claim that no notice reached them that they were required to pay by that time ; and it has been so far held in these cases by the courts below, that their right to make the payments and to enjoy the benefits of the plan by compliance with its terms could not be cut off without actual notice to them, or some legal proceeding to bar them.

It is important, then, to determine the meaning of the plan, because these plaintiffs cannot, by virtue thereof, have or obtain any rights which that, fairly interpreted, does not give them. At first, the projectors of the plan who framed and executed it were the only persons bound thereby. They gave the opportunity to others, on compliance with its terms, to become parties thereto. In framing and carrying forward the plan they represented not all the stockholders of the old company, but only themselves and such other stockholders as should, in time, assent to the plan, and thus become parties thereto. Before assenting the old stockholders had nothing but the privilege of assenting, and thus becoming interested in the new company. This privilege was held out to them by the projectors of the plan and secured to them by the law.

The foreclosure of the mortgage upon a long important and well-known railroad by public judicial proceedings, pending for several years, and the public judicial sale thereof after due notice, were facts of great notoriety, and the projectors of the plan may well have supposed that all the stockholders, wherever they might reside, would be reasonably careful of their

interests and vigilant in looking after their rights, and would thus have notice of these facts. By inquiry, it was practicable and easy for any stockholder to learn of the existence and terms of the plan, as it was embodied in the articles filed for the organization of the new company, and they must be charged with knowledge of the law securing to them the right to assent to the plan within the six months. The organization of the new company to succeed to the old one, and the general features of the scheme of readjustment of interests were also open, notorious facts, and could not have failed to be generally known to the stockholders of the old company. The projectors of the plan had all these considerations before them. They also knew that to give actual notice to all the stockholders constantly changing, and greatly scattered through this country and Europe would be wholly and absolutely impracticable. Under such circumstances can it be supposed that they intended to place themselves in a dilemma which would make it quite certain that they would have to institute troublesome, difficult and expensive legal proceedings before the claims of the old stockholders, whose property interests had been barred by the foreclosure, should be finally put at rest ? If they contemplated any notice, was it other than that which was usual and appropriate in such cases, and which alone was practicable, the notice by publication in the newspapers ? The plan contains no provision for notice to any one ; and for reasons given, none can be implied. It does not undertake to fix or limit the time within which the old stockholders were required to give their assent. That was left as regulated by the statute. But it authorized the trustees to limit the time within which the payments were to be made by the old stockholders, not the time within which their assents were to be given. The law required that the assents should be given within the six months, and then payments could be made within the time limited by the trustees under the plan. The plan required the payments to be made before the expiration of such time as might be "lawfully limited" by the trustees. What was meant by the words "lawfully limited ?" Certainly not the impracticable

and unusual actual notice of which I have spoken; certainly not protracted legal proceedings to which non-resident or unknown stockholders could be made parties only by publication. These words have significance if they be held to mean that the time should be limited by a majority of the trustees at a meeting regularly called, of which all of them had notice. They have significance also if they be held to have reference to the statutory limitation of six months. The trustees might lawfully, as they did, give the stockholders more than six months to comply with the terms of the plan; but they could not require their compliance in less time. The projectors of the plan were not bound to provide for any notice to old stockholders, or for the limitation of any time within which compliance with its terms should be required. They could have specified the terms and left the time to be regulated by the statute, and when they conferred authority upon the trustees to limit the time, it was discretionary with the trustees whether they would give any notice. They were bound to hold out the privilege to the old stockholders for the six months. At the expiration of that time they could shut the doors against all tardy comers, without violating the rights of any one. They were bound by no contract and commanded by no law to hold out the privilege longer to belated stockholders.

But we may go further; suppose we read between the lines of the plan, as if plainly written there, that the trustees were not only required to limit the time, but to give notice of the time for compliance with the plan. Then what kind of a notice were they required to give? Not actual notice to be served upon all the stockholders, scattered over Europe and America. No sensible, experienced men, acting under the advice of able counsel, would undertake to give such a notice. It is a question of intent. They could be required to do no more than the projectors of the plan intended they should do; and the old stockholders could have no greater rights by virtue of the plan than it was intended they should have. It could not have been intended that the trustees should be required to give a notice

which it was certainly impracticable to give, and which the projectors knew they could not give.   By notice in such a case must be meant the notice which is usual in such cases, and all the notice which persons acting in good faith would be expected to give.   Even a notice deposited in the mail would not be actual notice, as it might not reach the person intended, and even if it did, it might be impossible to show that it did.

In the law, where property interests or personal rights are to be affected, actual notice of adverse proceedings is required, unless there is expressly substituted for it some other kind of notice. But there are many cases where notice by publication is the only notice practicable, and hence takes the place and serves the purpose of actual notice.   But where a contract requires a notice to be given, without expressing what kind of notice, then the provision as to notice must be construed like any other provision in the contract, so as to effectuate the intention of the parties. In such a case, construing all parts of the contract, the purpose to be accomplished thereby, and the circumstances surrounding its execution and performance, it must be determined what kind of a notice the parties contemplated and intended.   And so construing this plan, as if it contained a provision for notice, we are of opinion that a notice by publication was all the notice intended.

So, in any aspect of this case, we reach the conclusion that the notice by publication, extensively made in good faith, was all that was required.

There was, therefore, no ground for the relief claimed by the plaintiffs, and the judgment in each action must be reversed, and the complaint therein dismissed, with costs.

All concur.

Judgment accordingly.