### DE GELLERT *v.* POOLE et al.

(*City Court of New York, General Term.*  November 23, 1888.)

1. CONTRACTS—CONTINUANCE—NOTICE OF TERMINATION—CUSTOM OF THEATER.
  Defendants engaged plaintiff's services as star of the ballet, to continue during the run of a certain play, unless terminated by two weeks' notice,—the manner of giving which was not provided for,—and to be performed throughout the country. After closing at New York, the company, including plaintiff, went on a tour, under a contract between defendants and a third person, of which plaintiff did not know, and she received her salary for a month afterwards.  *Held*, that notice posted on the door of the green-room of the theater in New York, according to an alleged custom of defendants, and not brought to plaintiff's attention, was insufficient to terminate the contract, and defendants remained liable for her salary.

2. EVIDENCE—SECONDARY—FAILURE TO PRODUCE TELEGRAM.
  On a party's failure to comply with a notice to produce a telegram testified to have been sent to him, secondary evidence of its contents is admissible.

Appeal from trial term.

In this action by Theodora de Gellert against John F. Poole and others, on a contract for plaintiff's services as star of the ballet, plaintiff had a verdict and judgment, and defendants appeal.

Argued before McADAM, C. J., and McGOWN and PITSHKE, JJ.

*A. J. Dittenhoefer*, for appellants.  *Jeroleman & Arrowsmith*, for respondent.

PER CURIAM.  The defendants, who are theatrical managers, by contract dated May 5, 1884, employed the plaintiff as an artist, in the character of the star of the ballet, during the run of the "Seven Ravens."  Services under the contract were to commence August 18, 1884, and were to be continued during the run of the play, unless sooner terminated by the notice hereinafter mentioned.  The salary was to be $125 per week, when the services were rendered in the city of New York, and $150 when rendered outside of the city, together with railroad fares and transportation of her baggage.  The action is for services from December 8, 1884, till January 17, 1885, aggregating $900, less $134 paid on account thereof, leaving $766 due; and for this amount the jury awarded the plaintiff a verdict.  The defendants claimed that the season terminated at Niblo's Garden, November 8, 1884, and that they have not since produced the play, and are not responsible to the plaintiff for services rendered after that time.  The contract required the plaintiff to perform services, not only at Niblo's Garden, New York, but at such theaters, opera houses, and halls throughout the United States and Canada as might be required.  After closing at Niblo's, on the 8th of November, 1884, the defendants' company, with their scenery and wardrobe, went on the road, November 16, 1884, and the plaintiff remained with the company until January 17, 1885, having received her pay in full till December 8, 1884, a month after the play closed at Niblo's,

and $134 on account of her salary thereafter. The company was put upon
the road, under a contract made by the defendants with one Mendum; but
the plaintiff had no knowledge of this contract, for she telegraphed on to the
defendants for her salary, and demanded from them the balance due her upon
her return. She testified that she asked Mr. Gilmore if he or Mr. Poole were
going on the road with the play, and that Gilmore said he never went on the
road, but sent a responsible manager with the company. The contract pro-
vides that two weeks' notice shall be given of the opening and closing of the
season. The provision is in these words: "It is further argeed between the
parties hereto that said parties of the first part shall have the lawful right to
determine when the season mentioned herein shall begin and terminate, and,
in order to begin or close said season, said parties of the first part shall give
two weeks' notice in advance of such commencement or termination, and should
the said parties of the first part give such two weeks' notice, to the said party
of the second part, of the termination of said season, then such notice, after
the expiration of said two weeks, shall have the effect of dissolving said agree-
ment, and freeing the parties hereto from the obligations contained herein."
The question to be determined is whether, under this provision, the notice re-
quired to terminate the plaintiff's engagement should have been brought home
to her, or whether posting it on the door of the green-room, according to what
the defendants call their custom, was sufficient, without being called to the
plaintiff's attention. We think the notice should have been brought home to
her, in some form. She swears that she never saw the notice posted up, and
never heard of it. The sufficiency of notice, whenever it is required, must,
in the nature of things, depend much upon the circumstances of each case.
Where personal notice is difficult or impossible, the law is sometimes satisfied
if the next best mode of communicating it is adopted; for as was said by the
court of appeals in *Vatable* v. *Railroad Co.*, 96 N. Y. 62: "Where a contract
requires a notice to be given, without expressing what kind of notice, then
the provision as to notice must be construed like any other provision of the
contract, so as to effectuate the intention of the parties." The contract is
silent as to the mode of communicating notice, and it is not going too far to
hold that the parties contemplated a personal notice, such as is usually given
by an employer on discharging an employe. In *Wachtel* v. *Noah Widows*,
60 How. Pr. 424, the court of appeals hold that, in the absence of any agree-
ment for a different mode of service, it should be made personally, as required
by common law, when the object is to deprive a party of his rights or prop-
erty. The notice required in the present case was intended to terminate the
plaintiff's rights under her contract, and should have been given in a form
that brought the facts to her attention. We think the word "notice" was
not used in a special or limited sense, and that the parties intended that their
contract in respect thereto should be interpreted by the legal force of the lan-
guage used, rather than by custom. The answer alleges that notice was duly
and regularly given, which inferentially means personal notice. Custom is
not pleaded, nor are the regulations of the defendants' theater pleaded, nor is
any excuse for not giving personal notice stated. Notifying a lady of con-
fessed talent that she is discharged, by posting the fact in the green-room,
would hardly be an agreeable form of notification to an artist of ordinary feel-
ings, nor do we believe that the plaintiff ever contemplated that such a form
of notice should be given to her under the contract. It would be unreason-
able to expect every chorister or member of the ballet to be daily scanning the
walls of the green-room for notices of their discharge, when the more agree-
able and easy method of personal communication was at all times present.
The plaintiff was a member of the defendants' company, under their constant
command and direction, and personal notice was so easy of communication
that we are satisfied that both parties contemplated it. Under our construc-
tion of the contract, the notice, not having been brought home to the plain-

tiff, was insufficient to effect her discharge from employment under the contract; hence there is no error in the charge of the trial judge of which the defendants can legally complain. True, the plaintiff knew that the season at Niblo's closed November 8, 1884; but, when the defendants' company went on the road, she had the right to assume that under her contract she was obliged to follow it, in the absence of the two weeks' notice to the contrary. Even if the plaintiff had seen the notice the defendants claim to have posted up, she might well have entertained and acted on this belief. If the defendants had intended to substitute Mendum as the plaintiff's future pay-master, she ought to have been informed of the fact. We emphasize this feature of the case. We have examined all the exceptions taken, and they are without merit.

The telegram testified about at folios 27 to 29 was sent to the defendants; it was presumably in their possession; and they ought to have produced it under the notice requiring its production; and, not having produced it, secondary evidence of its contents was properly received. Upon the entire case we think the judgment ought to be affirmed, with costs.